May it please the court. My name is Matthew Bean and with me today is Kat Caballo. We represent the plaintiff and the appellant in this matter, Cheryl Maracas. This matter arises under the Family Medical Leave Act of 1993. The purpose of the act was twofold. It was to balance the demands of the workplace with the needs of families to promote the stability and economic security of families and to promote the national interest in preserving family integrity and to accomplish these purposes in a manner that accommodates the legitimate interests of employers. In this appeal, we question that the employer had legitimate interests in its actions in terminating this maracas for what we all understand to be legitimate family medical leave. I'm going to confine my arguments to the absences that occurred on June 4th through June 6th, 2001, even though there were other absences that she was terminated for, but we're only confining our arguments to those particular dates. The question is, does an employer have a legitimate interest in terminating an employee on family medical leave without warning, without progressive discipline that's contemplated in the regulations, and without even inquiry whether there were extenuating circumstances that would warrant an extension beyond the minimum 15 days that a person has to submit a medical certification in the regulations? I'll start first with the warning regulations, 29 CFR 825.305. We've made two arguments in this respect. I want to focus on our second argument at today, and that is, does an employer have to provide all of the anticipated consequences when it warns an employee of the consequences of a failure to provide a medical certification? In the district court's opinion, the court, the employer is not obligated to provide all of the, quote, unquote, downstream consequences. The regulation doesn't talk about downstream consequences. It talks about the anticipated consequences. And what I didn't put in my brief and what I'd like to point out to the Court is a companion regulation, 29 CFR 825.301, specifically subsection B1. In that regulation, it says that the employer shall also provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. The warning that Boeing gave Ms. Maracas was very vague. It said that, essentially, if you don't get this certification in within 15 days, it will not be counted as FMLA leave. It doesn't say, hey, you're going to be fired if you don't get this stuff in. But wasn't, but by not being FMLA leave, then it was whatever leave that she was afforded under the collective bargaining agreement with Boeing. And for that, there was a, there was a whole series of scheduled warnings and procedures. Right. So the default is that whatever was not FMLA, then, had to come within whatever agreement that she was subject to with Boeing. And it's the employer's obligation to anticipate the consequences of that for Ms. Maracas. It's not the employee's obligation to anticipate what an employer may or may not do. But hadn't she previously been given a warning that she was up against her leave limits? She had been given that warning that she was on step two, but she was not specifically warned of the, of all of the consequences that could result. So the employer simply failed to provide clear notice in its warnings. Where is, where is the, where in the statute of the regulations is the employer's obligation to give clear notice of those consequences? In the regulation I just cited, 301, 825.301B, the explaining any circumstance, any consequences of a failure to meet these obligations. And that regulation goes on to actually talk about Section 825.305. So we have anticipated consequences and we have any consequences. That doesn't mean first level or proximate consequences. It means any. All that the employer had to do in this case was put in the warning notice that if you are in step two of the, the progressive discipline, you will be subject to termination. It wouldn't be that hard. It's not unduly burdensome for an employer to amend its warning notice to comply with the purposes of the Act. I'll move on then to the next regulation, 825.311. And there's two, essentially two arguments to be made on this regard. I'm going to start first with the, with the progressive discipline issue, because I think this is really the heart of the case and what really should have happened here. 825.311B requires that if the employee, that the employer must allow at least 15 days after the employee's request or get that medical certification in as soon as reasonably possible under the particular facts and circumstances. If the employee fails to provide medical certification within a reasonable time and under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave. In this case, Boeing did not simply delay Ms. Morocca's ability to continue to use intermittent FMLA leave either for her own medical condition or her daughter's medical condition. It simply terminated her. The intermediate penalty that's contemplated by the regulations is this. If you don't get your medical certification in, you forfeit your right to continued medical leave. If you never get it in, never get it in, then it's not FMLA leave and certainly you could be terminated. At what point do we judge that the certificate is never coming in? Well, as we sit here today and before this lawsuit was filed, that certificate was in. The certificate was in several weeks, a couple of months after her termination. It was October, right? I believe it was filled out on October 12th. But from a different doctor who doesn't refer to the period in question. Yeah. And didn't refer to the illness that she initially indicated that she had. Is that correct? That's correct. But it doesn't matter because if Boeing was really concerned, if that was what kept Boeing from reinstating her, then we go back to 29 CFR 825-305, what happens if an employer finds that a medical certification is incomplete? If this would certainly be at most an incomplete or deficient medical certification, they'd turn Ms. Maracas back, give her a reasonable time to cure. Instead, it's just an add-on to the argument that we could have fired her at any time. So was Boeing obligated to wait until October to see whether she was going to come up with this? Boeing was obligated on July 17th, when they terminated her, to tell her that she couldn't use FMLA leave anymore until she got the certification in. That was the intermediate penalty. It could only terminate her if she never got it in. Yes, but at what point does never become present? Well, that's not the issue today, and I'm glad I don't have to answer that. I will answer it. I would say that that would be dicta in any decision, though, because it doesn't go to our case. I would say that never is when a reasonable person would decide that the employee has completely failed upon repeated attempts to get it in. But why isn't the 15 days that's found in 311B sort of a presumptive, reasonable period, and that after you haven't come up with that, then the employer may assume that it's not coming in, because that's the reasonable period, unless, of course, there are unusual circumstances. If you're in the hospital, you've been in your deathbed, obviously, and that's what's contemplated then by as reasonably possible under the particular facts and circumstances. Well, we can imagine any number of extenuating circumstances. And certainly if we look at, for example, the — I believe it was the Washington — no, it was the Uema-Nippon case. If the — because an employee cannot fill out the medical certification on her own, she is relying on a medical provider, the circumstances surrounding what the medical provider did or didn't do become an issue in what's reasonable under the circumstances. In this case, it's reasonable under the circumstances that if the doctor loses the forms, that Ms. Marakis be given another medical certification to take back to the doctor and have them fill out. The purpose of the Act, to balance the needs, the legitimate needs of Ms. Marakis against the legitimate demands of the employer, would require that the employer simply give her another medical certification to fill out and have her return it. Then we know that a person who was out on FMLA leave isn't terminated, isn't at peril just for taking FMLA leave. Mr. Bean, she's terminated on July 17th. Is that right? That's correct. Okay. Why on July 17th didn't Ms. Marakis come running into the HR office and say, oh, my gosh, I can't believe it. I called the doctor's office. They've lost the form. I'll get it to you. Don't fire me. Instead, waiting until October, three months after she's been fired, four months after she's been fired, and then show up with a form that doesn't look like it conforms to what she told her employer. Okay, well, I think one of the defenses that Boeing has is that it's a large bureaucracy. One hand doesn't know what the next. It's a large bureaucracy. They've got, I don't know, 50,000 people. But she was fired, and she knew that. They were certainly efficient enough to convey that to her. She was fired for six different absences, Your Honor, on her termination form. Her first recourse is not to go to HR. It's to go to her union. So she has to work with her union to figure out what to do next. She has to go through the grievance process. That's the way that they do it within the labor management organization. In this case, she had to figure out exactly what these days were. There was some confusion with her union rep, which absence or which, because she's a mom. She's a mom. She's got a seven-year-old daughter who broke her arm. She's got a son who's sick. She's got her own medical conditions she's worried about. She's running all over town trying to get these medical certifications in. She's working hard to do it. That it took this long really doesn't matter because she did ultimately get it in. We can't say that she never got the medical certification in. And Boeing didn't ask her to do that. Was there anything in Boeing's termination notice to her that would have alerted her that the problem was the leave that she didn't account for in June? No. It just says that she's got six different or I believe nine different absences that were deemed to be unsatisfactory. Is there anything in the record that indicates at what point she realized the doctor's form hadn't come in? No, that's not in the record. Let's just go on then to unless there are any questions on that. Isn't it a jury question what is reasonable under the circumstances? We submit that a jury could find that Ms. Maracas acted with due diligence in obtaining her certification from Boeing, taking it to her doctor and requesting her doctor fax it in. This is normal procedure. And there's no reason why Ms. Maracas shouldn't expect at least something, a reminder as she testified that her supervisor would give her the heads up, hey, we didn't get your medical certification in. You need to get that in right away. It's all that needed to happen. We could have saved a 20-year job, perhaps a million dollars in future wages for this person. These are the best jobs for laborers in the Northwest. This has a huge impact on her family. For her to lose a job at Boeing is a huge deal for her family. The security of her and her family is at stake here because Boeing didn't have a face-to-face or a phone call, any in-person contact at all to tell her that there was a problem. That's all that needed to be done. We submit that the balance between the needs of the families and the reasonable demands of the employer really rests on that particular issue. Boeing could have given her a warning, a heads up to let her know that there was a deficiency, and it should have applied the intermediate penalty of telling her, hey, you're not going to be able to use FMLA leave until such time that we see this certification. And if you never get it in, or if you don't get it in, I don't know if we want to interpret never to be a month or 90 days, statute of limitations. That doesn't matter, I think, because Boeing didn't even go there. It just simply terminated her. The adverse action occurred on July 17th when she was terminated. I'll save the rest for you all. Thank you. Good morning. My name is Paul Smith, and I represent the Boeing Company, defendant in this case. Before I get into more of a global overview of my comments, I did want to just address one factual issue that had come from the court, the question of when Ms. Marekis learned that the paperwork had not gotten in. And I think opposing counsel said that that was not clear in the record. In fact, it is clear in the record. If you were to turn to excerpts of record page 42, which is page 67 of Ms. Marekis' deposition, I asked her the question, when was the first time you learned that Boeing had not received the medical certification from your doctor? Answer, when I was terminated. So I think I would submit that it's undisputed in the record that as of July 17th, 2001, she did know. Did she explain how she learned, how she realized that her certificate was not in? Was that because of an oral conversation, because of some record that she was able to see? Is there anything in her letter of termination that would indicate what the problem was? The letter of termination lists the dates for which Boeing considered them to be unexcused absences, which included the 4th through the 6th. So she, I would say there's probably a pretty reasonable inference just from that. But it didn't say June 4th through 6th because you didn't, this is an unexcused absence. It did say it was an unexcused absence, yes. And so she would have to, but it didn't say on the face of it it was unexcused because you didn't turn in your FMLA paperwork. Apparently, though, it did come up in her termination meeting because she testified under oath that the first time she learned that Boeing had not received the medical certification from her doctor was She did have a face-to-face with Boeing on June 17th, or on July 17th? July 17th. She was fired in person, not by letter? That's right. So we really have a case that is ripe for summary judgment termination because the facts are largely undisputed. Indeed, all of the material facts are undisputed. We have a record of progressive discipline here. Again, there was some comment from the other side that there was a failure of progressive discipline. I'm not sure it's really here nor there. But just to set the record straight, it's undisputed that, in fact, Ms. Marekis had been disciplined a number of times by the Boeing Company for attendance problems. And in particular, on October 2000, she received the first step of progressive discipline, which was a written warning for a number of unexcused absences. Then in January of 2001, she received a one-day suspension, which was the next step of progressive discipline for, again, a series of unexcused absences. And it is absolutely clear on the record that at that point, when she gets back from one-day suspension, she sits down with her supervisor, and her supervisor has a heart-to-heart talk with her and says, Look, you know, you're on now the third step of progressive discipline. If you have any more unexcused absences, you will be terminated by the Boeing Company. That's how our attendance rules work. And she acknowledged that she understood that. It's not very complicated, and she did understand that. So I'm jumping ahead of myself a little bit here, but the argument that she, that Boeing did not properly inform her of the consequences of not turning in the medical certification are really not supported by the facts here at all. In fact, she did. Why didn't HR just come forward and say, Hey, where's your doctor's certificate? You had 15 days, and we haven't seen it. Are we missing something here? What's happened to this? You know, the answer there is that, in fact, the record shows that Boeing did send her a letter. Now, it's a disputed fact as to whether she received the letter, and so given the posture of the case, we have to assume that she did not. But, you know, to the extent we're sort of looking beyond the actual language of the regs and looking at sort of the general equities here, the fact of the matter is Boeing did have a process where they did try to warn employees when they didn't return the medical certification within the 15 days. But what we have undisputed in the record, of course, is that that did not happen, and Boeing, you know, sometimes criticizes being a slow bureaucracy, and sometimes it is, but I would say that in this case it was benefited by that because the 15 days comes and goes, another week comes and goes, another week after that comes and goes, and it's actually 42 days after the request is made when Boeing finally calls her in on July 17th and informs her that she's terminated and the reasons therefore. Boeing never received this, the medical certification necessary under the FMLA within the 15 days. Is there any routine next step after that? Or is it, as in this case, the next step is, you know, whatever discipline or action is appropriate under just general personnel rules? In other words, you know, is the employee told, well, you know, 15 days has passed, we haven't received anything from you or your doctor. Is there any kind of notice like that given? Yeah, Boeing goes above and beyond what's required by the FMLA, and it does have as part of its process and did send here a letter to the employee saying, look, the 15 days has come and gone and we've never received your medical certification. Well, that's the letter she says she didn't get, isn't it? Right. She didn't get it, but it was sent. But I think the important point is that that's above and beyond what's required by the FMLA. There's nothing in the FMLA that says that employers have to give that kind of warning. Congress and the Department of Labor have tried to strike a balance here between the interests of employers and employees, and I think Judge Kuhnhauer was quite right in his decision when he said that he was not inclined to add a new requirement of a warning after the 15 days has expired that's not otherwise present in the regulations of the FMLA. Counsel, would you address Mr. Bean's argument that under 311, is it 311 or 305, that for Boeing, the solution is that she no longer gets FMLA leave in the future? Right. 311 does provide for two different. 311B. 311B provides for two different paths, you might say. One is that if the employee fails to provide the medical certification within a reasonable time, the employer may delay the employee's continuation of FMLA leave, and if the employee never produces the certification, the leave is not FMLA leave. Under the, I think, the plain language of that first sentence, it wouldn't apply here because there was no continuation of FMLA leave to delay. I mean, she had already, it had already come and gone. She started on June 4th and ended on June 6th. You're suggesting, then, that the language of continuation of leave is in the case where the leave is foreseeable, that you're in a period of extended leave. Right. And you don't have to wait. You don't wait until the very end and then come up with the certification, but if you're in a period where you can anticipate you're going to be out for six weeks. I'm out for back surgery, and I know I'm going to be out for eight weeks, and after the 15 days comes and we don't receive back the medical certification, then you would say that the employer would have the right to delay continuation of the leave. But in a case like this, in fact, any leave that's less than 15 days, you do the math and it would leave the employer essentially without a remedy because you can't delay the continuation of it because it's already over by the time you know whether you've gotten the medical certification back within that 15-day time period. When did Boeing first learn of the plaintiff's position that she never received this follow-up letter? Was that after litigation started? Yeah, it was. I believe that's right. I don't think they knew until the litigation got into discovery that it came out that she was taking the position that she never received that warning letter. I believe that's the case, Your Honor. All right. In that context, then, what's the response to this argument, which I think is one of the arguments the plaintiff is making? But under 305B, which says you have to give at least 15 days, right? Right. Notice the last part of that regulation goes like this. Unless it is not practicable under the circumstances, you know, to give that notice despite the employee's diligent good faith efforts. I think it's the employee's position here that she did make diligent good faith efforts in the sense that, you know, she gave the form to the doctor and said, would you fill this out and send it back? Right? And she didn't know that the doctor didn't send it in, putting, you know, the best light on her case. Now, if that's the case, wouldn't this, it is not practicable language, excuse not having the notice in within 15 days? We would say no because it was entirely practicable for her to contact her doctor to confirm that the notice went in. It was entirely practicable for her to contact Boeing to confirm that Boeing had the notice. So you think it's a routine notice and it would be not just under the FMLA but under all kinds of things, you know, under HMO plans and all that where when an employee, you know, asks the medical provider to do something, they routinely have the obligation to follow up and make sure that the provider did that? I do. I think under the statute and the regulation. Do you ever call your doctor and say, listen, did you send that form in? I asked you to send it in last week. I've never done it. If my job was on the line, I definitely would. If I knew I was on the third step of progressive discipline. That's the other question, though. How should she know her job is on the line? She had been clearly warned because of the progressive discipline. So she knew she was on the third step. She was on the bubble. And that's a teeny, teeny percentage of Boeing employees who are in that situation. This wouldn't have general application. But when you're on that bubble, when you've gotten to that last step, it absolutely would be practicable. The other thing I guess I would also point out is that as the Court had suggested, there was no ‑‑ she didn't come back when she indisputably learned of the failure of the doctor's office to provide the medical certification on her termination day. She didn't immediately come back with the certification. And I think Judge Kunar was quite correct in concluding that no reasonable fact finder would find that she took all reasonable efforts to get that medical certification in. Let me ask this. As far as this record here shows, when she got the termination notice, I guess it was on the 17th, she didn't have an immediate reaction, at least as far as notifying Boeing of any circumstance to contradict the ground of termination. In other words, I think at the beginning you referred to some portion of her definition, which showed she had some kind of notice. But from her, there was no communication to Boeing at or shortly after that time. Right. In other words, she didn't bring ‑‑ well, she didn't bring the medical certification in itself. It comes in months later and it's got the name of a different doctor and it doesn't seem to necessarily apply to the days at issue. Well, I also wanted to make the point that on the adequacy of the warning or information that she got at the time she requested the leave as to what the consequences would be if she didn't return the medical certification. And what the notice she got is that it would not be counted as FMLA leave. And what Ms. Marcus is arguing is that Boeing should have explained that it would also lead to her termination. That, it's really not that simple because in this, as things played out and this particular fax led to her termination. But you have to recall that the company, any employer under the regulations, they give that notice to the employee at the start of the leave, when the employee requests the leave. And you would, it's only after the fact, essentially, when you know how many unexcused days there are, for instance, that you know whether it's going to lead to termination or not. It's possible, for instance, if she was only out for a day or two instead of three, that it wouldn't have been grounds for termination. I mean, our facts are a little bit funky that way, but if the court were to impose a new requirement on employers that they had to, in that FMLA documentation for an employee, explain whether it's going to be a termination or not at the time the employee requests the leave, I think that would be not only something that is beyond what's stated in the regulations, but wholly impractical because in many instances, the employer at that point in time would not know itself exactly what the consequences are because it depends on how many unexcused absences, you know, it ends up being. So I think imposing a new requirement like that would be unwarranted under the regulations. When she returns, at what point is she given the form? She, the record I think She gets requested or does Boeing just come up with it? What happens? She calls Boeing during this June 4th to June 6th period. I think the record reflects June 5th, but whichever particular day it was, I don't think there's a particular consequence. She calls Boeing and says she wants medical leave, and Boeing says, okay, we're going to mail out to you our packet for FMLA leave, and included in that packet is the requirement, well, the stated requirement that you must return a medical certification form and the form itself. And I think the record reflects that she thinks she got that on the 8th or 9th in the mail. So that was the timing. And the 15 days starts at what point? It starts at the time, I believe, that the employer informs the employee that that is going to be a requirement of FMLA leave. But here it doesn't, you know, whether you count the 15 days from June 5th or the 15 days from June 8th doesn't materially change any of the analysis here, I don't think. I guess I would just emphasize that this wasn't a precipitous out-of-the-blue termination. It was the result of months and months of progressive discipline for a variety of absences. So it's a little bit inaccurate to think that because this was just out-of-the-blue and her termination was based strictly on this. I guess I'd come back to the notion that the regulations and the statute are quite clear in placing the responsibility for returning the medical certification on the employee, him or herself. If we were the policymakers, we might decide that there should be a different rule. Perhaps it should be the responsibility of the employer to track down that medical certification. Perhaps it should be the responsibility of the health care provider. But for whatever reasons, Congress placed the responsibility on the employee. That's clear in the statute. And the Department of Labor has followed that statutory authority by promulgating a regulation that says it's the employee's responsibility to return that medical certification. And if they don't do so within 15 days or as soon as reasonably practical thereafter, the leave is not FMLA leave. In the final analysis, it's undisputed that the medical certification was not returned within the 15 days. And no reasonable fact finder could conclude that it was returned as soon as reasonably practical thereafter when it was, we believe, never provided. But if you count the October 2001 as an attempt at it, it was still four months after the fact. So the Boeing Company respectfully asks that this Court affirm the summary judgment below. Thank you, Mr. Smith. Mr. Bean? Yes, thank you. I'd like to make two points. We are not suggesting that it was Boeing's responsibility to track down that medical certification. Far from it. We are only suggesting that Boeing can't simply adhere to the 15-day policy, carte blanche. We're suggesting that 305 has two parts. One is the minimum 15 days and the other is reasonable under the circumstances. We are suggesting that the employer simply has an obligation to inquire if there are extenuating circumstances before deciding. Why is that Boeing's responsibility? Because they have to apply the policy. They are the ones in the power to decide that there are going to be consequences. But still, all right, so they make the decision under the facts known to them. And then if it's known to the employee that, well, they're missing a fact, doesn't that become the employer's obligation to let Boeing know, well, look, you know, I gave this to my doctor. And to say something to Boeing? I mean, in this case, there was no protest at all, right? Well, this happened at a termination hearing. I know that. That's the point. I mean, the adverse action had already been. That's the time for her to say something to them, isn't it? The time. It was her opportunity, in a sense. Well, she had. But there were six different absences on that day. And this was, like the employer said, 42 days after the fact. Why couldn't it have been 42 days and an hour? Ms. Marakis, go right now to your doctor and get this certification. 42 days is completely arbitrary. She's been given a 15-day safe harbor or reasonable under the circumstances, and we assume that that would be the doctor's on vacation. Or the doctor loses it. She's unconscious in a hospital someplace. But the 15 days, it seems to me that why isn't that her responsibility? Because the regulations and statutes seem to make it the employee's responsibility to come up with the certification. Well, again, it's 15 days or. I don't see what the burden is on the employer to make the inquiry were there extenuating circumstances. But that would be, that would be, that's not imposed by the regulation or by the statute, is it? It is. Well, again. The argument is it's implicit in the idea that it ought to be at a reasonable time. I don't believe that that. I believe that the balance would be struck appropriately if the employer inquired as to whether there are extenuating circumstances. The other point that was made here, and I think incorrectly, was that this 29-825-311-B applies when the need for leave is not foreseeable. 311-A applies in the case of foreseeable leave. So the regulation that I am relying on in 311 does apply to unforeseeable leave. Now, intermittent leave occurs over periods of time. She had a serious medical condition for over a year. She took it before and she took it after. It's disingenuous to say that this would, that her leave could not, would not be continuing. Absolutely, it would be continuing. Take, for example, a person who is on intermittent leave for kidney dialysis is going every week for dialysis. That would still be intermittent leave. The regulation would apply, and 311-B would apply to that person. The, why would a person who, well, take the example, what if Ms. Maracas' daughter had a more serious injury than a broken arm, and she was out in the hospital for an extended period of time, say 20 days? After the 15th day, Boeing's remedy would be to have Ms. Maracas come back to work until she got a certification of her daughter's illness. Why would a person with a less serious injury, who's actually less of a burden on the employer, be treated better than in that case? If we need to treat the people with the shorter-term injury, leaves, just as we would a person with a longer. There's no reason to treat somebody who's out a little bit longer better. That person gets to keep their job, and Ms. Maracas loses hers. That doesn't make any sense. The way to interpret 311 is to say that continued leave is just your ability to take continued leave. You still have a serious medical condition, at least as Maracas did. So on that point, I think it's really clear that 311B does apply to this case, even if it was unforeseeable leave. Unless there are any other questions, I'll rest. Thank you, counsel. We thank both counsel, and Maracas v. Boeing will be submitted.
judges: Browning, Tashima, Bybee